UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| LORA FELLNER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 4:21CV336 HEA |
| ) | |
| KILOLO KIJAKAZI,[1] ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court for judicial review of the final decision of the Commissioner of Social Security denying the application of Plaintiff Lora Fellner for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434. The Court has reviewed the filings and the administrative record as a whole, which includes the hearing transcripts and medical evidence. The decision of the Commissioner will be affirmed.

## Background

Plaintiff applied for disability insurance benefits on April 27, 2015. A hearing was held on March 7, 2017, in front of an Administrative Law Judge

---

[1] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi should be substituted, therefore, for Andrew M. Saul as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

(ALJ). On May 11, 2017, the ALJ issued an unfavorable decision finding Plaintiff was not disabled. Ultimately, Plaintiff filed an appeal seeking judicial review of the ALJ's decision in Case Number 4:18CV01162 SNLJ. District Judge Stephen N. Limbaugh, Jr. reversed and remanded the ALJ's decision. On remand, Judge Limbaugh ordered that the ALJ revisit Step Five and further develop the concrete consequences of Plaintiff's visual impairments, specifically her inability to read print smaller than twelve-point font. Judge Limbaugh further ordered that the ALJ shall determine, through the development of expert vocational testimony, whether Plaintiff's inability to read print smaller than twelve-point font erodes the base of jobs available to her to such a degree as to affect the outcome of the ALJ's decision at Step Five.

## April 2020 Hearing Testimony

A second hearing was held before the ALJ on April 6, 2020 since the prior decision was vacated, and the ALJ confirmed the testimony from the prior hearing was still considered evidence. At the hearing, Plaintiff confirmed there had not been any changes to her employment status, and the ALJ again classified her past work as a physical therapy assistant. Plaintiff testified to changes in her physical and mental state. Plaintiff testified her vision clarity had regressed because of her Fuchs' dystrophy, and she struggles with seeing things clearly on a daily basis. For instance, she has difficulty reading texts even on the largest phone font available and keeps her home computer around a sixty-four font. She is sensitive to the glare

from device screens and cannot drive at night. She trips and falls regularly when the lighting changes, as in when transitioning from inside to outside and it is really bright. She relies on her husband and children to read things for her. She testified her doctor's plan to recommend corneal transplants once her vision gets bad enough. Plaintiff also testified she was diagnosed with more osteoarthrosis in her low back that she receives monthly spinal injections for, and she had increased swelling in her legs, so she wears compression stockings daily and takes water pills.

    Alyssa Smith, a Vocational Expert (VE) testified, and the ALJ posed the first hypothetical: an individual with the Plaintiff's same age, education, and past work history as a physical therapy aide, who is able to perform work at a light exertional level, but who is limited to occasional ramps and stairs; no ladders, ropes or scaffolds; occasional balance as defined by the DOT[2]; occasional stoop, kneel, crouch and crawl; frequent reaching bilaterally; can only have occasional exposure to extreme temperature, humidity and pulmonary irritants; cannot operate a motor vehicle or have exposure to moving mechanical parts or hazardous machinery; cannot use a computer screen or complete tasks that require reading smaller than a twelve-point font, but is able to avoid ordinary work hazards. The VE testified that person could not perform Plaintiff's past work, but could perform

---

[2] Dictionary of Occupational Titles

the following jobs: cafeteria attendant, housekeeper or electrical accessories assembler.

A second hypothetical posed, assuming the same facts as the first, but reducing the individual's exertional category to a sedentary level. The VE testified that person could perform the following jobs: table worker, nut sorter and printed circuit board screener.

Assuming the same facts as the first hypothetical, the ALJ asked if the VE's opinion changed if that individual cannot complete tasks that require reading smaller than a fourteen-point font instead of twelve-point font. The VE testified that would not change her opinion. The ALJ's then asked if the VE's opinion changed if that same individual only had occasional near acuity. The VE testified that would change her opinion, as the electrical accessories assembler would be eliminated, but the housekeeper and cafeteria attendant jobs remain.

The last hypothetical posed, assuming the same facts as the second hypothetical that reduced the individual's exertional category to a sedentary level, added the limitation of only occasional near acuity. The VE testified that all three jobs (table worker, nut sorter and printed circuit board screener) would be eliminated, and there are no jobs at the sedentary exertional level with that limitation.

Plaintiff's attorney then examined the VE and asked if her opinion would change if the hypothetical individual, who could perform the jobs of a housekeeper

4

or cafeteria attendant, had a visual acuity that went below occasional to ten percent. The VE testified that the cafeteria attendant job would be eliminated, but the housekeeper would remain at a twenty-five percent reduction of available jobs. Plaintiff's attorney then asked if the VE's opinion would change if the same individual would be absent ten percent or more because of pain. The VE testified that would change her opinion, and no jobs would remain.

Because the DOT and Selected Characteristics of Occupations do not address the visual restrictions at issue in this case, like near acuity, font size or the use of a computer, the VE testified that it is her professional opinion, based on her experience, of how those jobs are performed and whether there is font that needs to be read in those types of jobs.

## **May 2020 ALJ Decision**

In an opinion issued on May 20, 2020, the ALJ determined that Plaintiff was not under a disability at any time from her amended alleged onset date of January 1, 2015 through her date last insured of September 30, 2019. The ALJ found that Plaintiff has not engaged in substantial gainful activity since the amended alleged onset date. In her decision, the ALJ found Plaintiff had the severe impairments of obesity, degenerative disc disease, Fuchs' dystrophy, rheumatoid arthritis, degenerative joint disease, myofascial pain syndrome, and varicose veins. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(a) with the following limitations:

> …[Plaintiff] can occasionally lift, carry, push, and pull up to 20 [pounds] and lift, carry, push, and pull 10 [pounds] frequently. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance (as defined by the DOT), stoop, kneel, crouch, and crawl. She can frequently reach bilaterally. She can have only occasional exposure to extremes in temperature, humidity, and pulmonary irritants. She cannot operate a motor vehicle or have exposure to moving mechanical parts or hazardous machinery. She cannot perform jobs that require the use of a computer screen or perform tasks that require reading smaller than a [twelve]-point font, but she is able to avoid ordinary work hazards

The ALJ found Plaintiff was defined as a younger individual (age 18-49), on the date last insured (20 CFR 404.1563). Based on vocational expert testimony, the ALJ found Plaintiff could not perform her past relevant work as a physical therapist assistant, but could perform the following jobs: cafeteria attendant, housekeeper, and electrical accessory.

Plaintiff filed a timely Request for Review of the ALJ's May 20, 2020 decision, and the Appeals Council denied the request for review. Plaintiff has exhausted all administrative remedies. The May 20, 2020 decision of the ALJ stands as the final decision of the Commissioner.

## **Legal Standard**

To be eligible for benefits under the Social Security Act, Plaintiff must prove that [s]he is disabled. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner engages in a five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). At Step One, the ALJ determines whether the claimant is currently engaged in substantial gainful activity. At Step Two, the ALJ considers whether the claimant has a "severe" impairment or combination of impairments. At Step Three, the ALJ determines whether the severe impairment(s) meets or medically equals the severity of a listed impairment; if so, the claimant is determined to be disabled, and if not, the ALJ's analysis proceeds to Step Four.

At Step Four of the process, the ALJ must assess the claimant's residual functional capacity (RFC) – that is, the most the claimant is able to do despite her physical and mental limitations, *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) – and determine whether the claimant is able to perform any past relevant work. *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005) (RFC assessment occurs at the fourth step of the process).

The claimant bears the burden through Step Four of the analysis. If [s]he meets this burden and shows that [s]he is unable to perform [her] past relevant work, the burden shifts to the Commissioner at Step Five to produce evidence demonstrating that the claimant has the RFC to perform other jobs in the national economy that exist in significant numbers and are consistent with [her] impairments and vocational factors such as age, education, and work experience. *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012).

The Court must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable person would find it adequate to support the conclusion. *Jones*, 619 F.3d at 968. Additionally, the Court must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). If, after reviewing

8

the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, the Court must affirm the Commissioner's decision; the Court may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *Id; see also Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017).

**Residual Functional Capacity (RFC)**

A claimant's RFC is the most an individual can do despite the combined effects of all of his or her credible limitations. *See* 20 C.F.R. § 404.1545. An ALJ's RFC finding is based on all of the record evidence, including the claimant's testimony regarding symptoms and limitations, the claimant's medical treatment records, and the medical opinion evidence. *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir.2010); *see also* 20 C.F.R. § 404.1545; Social Security Ruling (SSR) 96–8p.

## Decision of the ALJ

At Step One of the May 20, 2020 decision, the ALJ found that Plaintiff has not engaged in substantial gainful activity during the period from her amended alleged onset date of January 1, 2015 through her date last insured of September 30, 2019. At Step Two, the ALJ found that Plaintiff had the severe impairments of obesity, degenerative disc disease, Fuchs' dystrophy, rheumatoid arthritis, degenerative joint disease, myofascial pain syndrome, and varicose veins. However, the ALJ found that Plaintiff does not have an impairment or combination

9

of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, so the ALJ's analysis proceeded to Step Four. While the ALJ found none of Plaintiff's impairments met or medically equaled a listed impairment, the ALJ did find some limitations. Specifically, the ALJ found Plaintiff retained the RFC to perform light work, as defined in 20 CFR 404.1567(a) with the following limitations: Plaintiff can occasionally lift, carry, push, and pull up to 20 [pounds] and lift, carry, push, and pull 10 [pounds] frequently. She can occasionally climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She can occasionally balance (as defined by the DOT), stoop, kneel, crouch, and crawl. She can frequently reach bilaterally. She can have only occasional exposure to extremes in temperature, humidity, and pulmonary irritants. She cannot operate a motor vehicle or have exposure to moving mechanical parts or hazardous machinery. She cannot perform jobs that require the use of a computer screen or perform tasks that require reading smaller than a [twelve]-point font, but she is able to avoid ordinary work hazards.

At Step Four, the ALJ found Plaintiff is unable to perform her past relevant work as a physical therapist assistant.

At Step Five, the ALJ found Plaintiff could perform work based on VE testimony. Considering Plaintiff's age, education, work experience, and the RFC, the ALJ found Plaintiff could perform the following jobs existing in significant numbers in the national economy: cafeteria attendant (approximately 28,000 jobs

10

in the national economy); housekeeper (approximately 219,000 jobs in the national economy); and electrical accessory (approximately 10,000 jobs in the national economy). Therefore, the ALJ found Plaintiff not disabled.

## Statement of the Issues

Generally, the issues in a Social Security case are whether the final decision of the Commissioner is consistent with the Social Security Act, regulations, and applicable case law, and whether the findings of fact are supported by substantial evidence on the record as a whole. The issues here are (1) whether the RFC related to Plaintiff's visual limitations is supported by substantial evidence; and (2) whether the ALJ's findings in Step Five are supported by substantial evidence.

## Discussion

The ALJ carefully detailed her findings through her discussion of Plaintiff's impairments. As described above, this Court's role is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. *See* 42 U.S.C. §§ 405(g); 1383(c)(3); *Richardson*, 402 U.S. at 401; *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). So long as there is substantial evidence in the record that supports the decision, this Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Haley v. Massanari,* 258 F.3d 742, 747 (8th Cir. 2001).

11

**Whether the RFC Related to Plaintiff's Visual Limitations is Supported by Substantial Evidence**

The ALJ found in the RFC that Plaintiff cannot perform jobs that require the use of a computer screen or perform tasks that require reading smaller than a twelve-point font. Plaintiff challenges that the RFC is not supported by substantial evidence because the visual limitations in the RFC were not restrictive enough, and the ALJ did not discuss the medical evidence to support those limitations.

RFC is what a claimant can still do despite her limitations. *See* 20 C.F.R. § 404.1545(a). "The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [her] limitations." *Hensley v. Colvin*, 829 F.3d 926, 931-32 (8th Cir. 2016) (citation omitted). "'Because a claimant's RFC is a medical question, an ALJ's assessment of it must be supported by some medical evidence of the claimant's ability to function in the workplace.' However, there is no requirement that an RFC finding be supported by a specific medical opinion." *Id.* at 932 (citation omitted). "[I]n evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner." *Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007) (citation omitted).

12

The subject regarding Plaintiff's visual limitations came up several times throughout the record, and the ALJ acknowledged Fuchs' Dystrophy as one of Plaintiff's severe impairments. At the April 2020 hearing, Plaintiff testified her vision had regressed. She testified she as difficulty reading texts on the largest phone font available and keeps her home computer around a sixty-four font. She is sensitive to the glare from device screens and cannot drive at night. She trips and falls regularly when the lighting changes. She relies on her husband and children to read things for her.

While the ALJ recognized Plaintiff had visual limitations, the ALJ appropriately concluded that the objective evidence did not support the degree of limitation alleged. In making this finding, the ALJ found that the objective evidence, like Plaintiff's vision examinations, did not support her allegation of visual impairment to the level of disabling severity. For instance, in October 2014, Plaintiff exhibited full visual fields. The medical record reported issues with double vision, glare sensitivity and reported difficulty reading small print. Treatment records showed treatment with glasses and eye drops. By June 2017, she indicated her vision was "ok" but reported four falls. Her prescription was updated that September. In December 2017, she denied pain and discomfort in the eyes and stated vision with the new prescription was good. A visual field test also presented normal results. In June 2018, treatment records noted her vision was stable. She was noted to have a cataract, but surgery was not recommended during the relevant

13

time period and records indicate it would not be recommended until the loss of vision interfered with her activities of daily living. By September 2019, vison examinations showed corrected vision of 20/30-1 and 20/40-1.

The ALJ gave great weight to a 2016 evaluation by Daniel Walsh, O.D., Plaintiff's treating ophthalmologist for many years and a specialist in vision impairments, who stated Plaintiff's visual acuity in both eyes after best correction was 20/30. The ALJ gave some weight to Dr. Walsh's opinion, which is consistent with Lawrence Gans, M.D., that indicated Plaintiff's vision symptoms impacted her ability to read, drive in the dark, and use of a computer due to glare. Dr. Gans also indicated Plaintiff could perform tasks requiring near acuity, far acuity, depth perception, accommodation, color vision, and field of vision constantly.

The ALJ further explained that Plaintiff's reported activities are not limited to the extent that would be expected given her allegations of disabling impairments. For instance, the ALJ noted Plaintiff reported activities such as driving, shopping, making dinner, doing laundry, handling personal care, using a riding lawnmower, and traveling to places such as Europe for three weeks and Cancun. While these activities do not alone establish Plaintiff was not disabled, the ALJ cited these activities in the appropriately limited context, which was to show that her allegations were not entirely consistent with the record. See *Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (Although activities such as light housework and visiting with friends are not alone sufficient to discredit subjective

14

complaints, the extent of Plaintiff's physical activities when considered in conjunction with the medical record in this case, supports the ALJ's decision).

In explaining her findings, the ALJ need only "minimally articulate reasons for crediting or rejecting evidence of disability." *Strongson v. Barnhart,* 361 F.3d 1066, 1070 (8th Cir. 2004) (citing *Ingram v. Chater*, 107 F.3d 598, 601 (8th Cir. 1997). The ALJ recognized Plaintiff's visual limitations, but the collective findings support no greater limitation than as stated in the RFC. *See Despain v. Berryhill*, 926 F.3d 1024, 1028-29 (8th Cir. 2019) (substantial evidence supported RFC finding based on treating and other providers' notes, state agency consultants' opinions, and claimant's treatment and daily activities); *Wildman*, 596 F.3d at 969 (ALJ did not err by declining to include in RFC limitations based on claimant's allegations that he found not credible, or limitations from physicians' opinions he properly disregarded).

**Whether the ALJ's Step Five Findings are Supported by Substantial Evidence**

Plaintiff argues the ALJ's Step Five findings are not supported by substantial evidence because the ALJ did not reconcile the outstanding inconsistencies in the record regarding vocational issues. Plaintiff maintains that Dr. Magrowski, the VE who testified at the first hearing, opined that an individual would be incapable of working if she was unable to read a computer screen and a particular font size. However, VE Smith, who testified at the second hearing, opined Plaintiff would be able to engage in substantial gainful activity with those limitations.

15

Plaintiff inaccurately describes Dr. Magrowski's testimony at the first hearing. The ALJ's question to Dr. Magrowski was whether an individual who had a limitation to *no reading* could perform the jobs identified in the hypothetical question. Dr. Magrowski responded that most jobs require some degree of reading and went on to explain if the hypothetical assumed that the individual was illiterate, then that individual would be incapable of working. There is no indication in the record that Plaintiff is illiterate. The inability to read a particular font size on a computer screen is obviously not complete illiteracy. In fact, in response to one of the hypothetical questions that included a limitation of no use of a computer screen, Dr. Magrowski also identified jobs a person could perform.

Plaintiff next contends that the ALJ's decision that she is capable of performing other work is based upon a hypothetical question that does not capture the concrete consequences of Plaintiff's visual impairments and is not consistent with the DOT and SCO.

At Step Four, the ALJ added a non-exertional restriction to Plaintiff's RFC related to her vision problems, specifically that Plaintiff cannot perform jobs that require the use of a computer screen or perform tasks that require reading smaller than a twelve-point font. A non-exertional limitation, such as loss of or constraints to visual acuity, compels the ALJ to call upon a VE at Step Five to determine whether that limitation further diminishes the base of jobs available in the national economy. See *Doolittle v. Apfel,* 249 F.3d 810, 811 (8th Cir. 2001).

16

The ALJ's first hypothetical posed to VE Smith included that the individual cannot use a computer screen or complete tasks that require reading smaller than a twelve-point font. VE Smith testified that person could not perform Plaintiff's past work, but could perform the jobs of a cafeteria attendant, housekeeper or electrical accessories assembler. When the ALJ asked if VE Smith's opinion changed if that the individual cannot complete tasks that require reading smaller than a fourteen-point font instead of twelve-point font, VE Smith testified that would not change her opinion. The ALJ then asked if the VE Smith's opinion changed if that same individual only had occasional near acuity. VE Smith testified that would change her opinion, as the electrical accessories assembler would be eliminated, but the housekeeper and cafeteria attendant jobs remain.

The hypothetical asked by the ALJ that resulted in no jobs was when the individual's exertional category was reduced to a sedentary level with the limitation of only occasional near acuity. However, the record does not support limitations beyond those listed in the RFC finding as discussed above. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006) (ALJ need not rely on vocational expert testimony elicited in response to a hypothetical question that includes greater limitations than those ultimately included in the RFC determination). In the ALJ's hypothetical questions to VE Smith, the ALJ included only those limitations she found were supported by the record. The substantial evidence in the record as a whole supports the ALJ's findings in Step Five that Plaintiff was not disabled and

17

could perform the following jobs existing in significant numbers in the national economy: cafeteria attendant (approximately 28,000 jobs in the national economy); housekeeper (approximately 219,000 jobs in the national economy); and electrical accessory (approximately 10,000 jobs in the national economy).

## Conclusion

After careful review, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. *Perkins v. Astrue,* 648 F.3d 892, 900 (8th Cir. 2011).

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED.**

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 23rd day of September, 2022.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE